MEMORANDUM AND ORDER
 

 BUCHWALD, District Judge.
 

 Petitioner, Jeffrey Washington (“Washington”) brings this habeas petition pursuant to 28 U.S.C. § 2254 seeking to overturn his 1993 conviction in Bronx County Supreme Court for one count of rape in the first degree, N.Y. Penal Law § 130.35(3); one count of sodomy in the first degree, N.Y. Penal Law § 230.50(3); and two counts of sexual abuse in the first degree, N.Y. Penal Law § 130.65(3). In brief, petitioner was convicted of raping his then five-year-old daughter, largely on the basis of his daughter’s testimony. Petitioner contends that the judge that presided over his trial denied him his federal constitutional right to call witnesses and present a defense by excluding the testimony of petitioner’s proposed expert witness, who would have testified to the suggestibility of child witnesses, such as petitioner’s daughter.
 

 The Court, having received the Report and Recommendation (“Report”) of United States Magistrate Judge Henry B. Pitman, dated January 27, 2000; the objections filed by petitioner (“Obj.”), dated February 9, 2000; and the submission of respondent (“Resp.”) dated February 25, 2000; having heard oral argument on March 10, 2000; and having conducted a
 
 de novo
 
 review of the record, accepts and adopts the Magistrate’s Report, except with r’espect to the issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253. We write to respond to petitioner’s objections and to supplement the challenged portions of Judge Pitman’s analysis. Familiarity with the facts described in the Report is assumed.
 
 See, generally,
 
 Report at 2-8.
 

 DISCUSSION
 

 Petitioner objects to Judge Pitman’s Report on two grounds. First, petitioner argues that Judge Pitman incorrectly applied a deferential standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”). Second, petitioner argues that Judge Pitman did not apply the correct constitutional analysis. Neither argument is availing.
 

 A.
 
 Standard of Review
 

 First, petitioner contends that because the state court did not rule on the evidence issue raised in this case in constitutional terms, it did not decide the issue on the “merits,” and thus that the decision should be reviewed
 
 de novo
 
 to determine whether it is “contrary to” clearly established federal law, instead of being reviewed under the more deferential “reasonable application” standard. Obj. at 2-3.
 
 See also Smalls v. Batista,
 
 191 F.3d 272, 278 (2d Cir.1999) (noting the differing applications of the two standards). In the final analysis, federal habeas review must be governed by the holding of the state court — not the form of its articulation.
 
 See, e.g., Arizona v. Evans,
 
 514 U.S. 1, 7-8, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (warning against the “unsatisfactory and intrusive practice of requiring state courts to clarify their decisions” by citing to federal precedents).
 
 [1]
 

 
 *387
 
 In any event, as Judge Pitman correctly noted, the Second Circuit has not yet determined under what circumstances each standard applies and, moreover, correctly observed that it is unnecessary to weigh in on the issue, which is pending before the Supreme Court, because “petitioner has not shown constitutional error under either standard.” Report at 8-9 (citing
 
 Smalls,
 
 191 F.3d at 278).
 
 [2]
 

 B.
 
 Constitutional Analysis
 

 Petitioner challenges Judge Pitman’s constitutional analysis in two respects. First, he argues that Judge Pitman “ignored overwhelming precedent throughout the country requiring admission of expert testimony on the suggestibility of childhood memory” and the “well-developed body of academic literature” documenting the phenomenon. Obj. at 6-9. Second, petitioner argues that Judge Pitman “made the very same error the state courts made” in reaching the conclusion that exclusion of the testimony did not deprive petitioner of a fair trial. Obj. at 10-12. We will address each of these objections in turn.
 

 We are mindful that the role federal courts in habeas review is limited to determining whether a conviction violates the Constitution, laws, or treaties of the United States.
 
 See Estelle v. McGuire, 502
 
 U.S. 62, 88, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Where the trial court’s purported error centers around excluded evidence, petitioner must establish that the “omitted evidence creates a reasonable doubt that did not otherwise exist.”
 
 United States v. Agurs,
 
 427 U.S. 97, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The reviewing federal “court’s duty on a petition for habeas corpus is to determine whether the excluded testimony was material to the presentation of the defense so as to deprive the defendant of fundamental fairness.”
 
 Rosario v. Kuhlman,
 
 839 F.2d 918, 924 (2d Cir.1988).
 
 [3]
 

 See also McCray v. Artuz,
 
 No. 93 Civ. 5757, 1994 WL 603057, at *2 (S.D.N.Y. Nov.3,1994). Generally, however, an evidentiary ruling is “not a matter of federal constitutional law.”
 
 Gantt v. Artuz,
 
 No. 97 Civ. 3031, 1999 WL 1206733, at *3 (S.D.N.Y. Dec.16, 1999) (citing
 
 Cohn v. Johnson,
 
 19 F.Supp.2d 112, 118 (S.D.N.Y.1998)).
 

 Much of petitioner’s objections are concentrated on establishing the “undisputed weakness of the People’s case” and he liberally cites to Judge Pitman’s descriptions of these limitations. Obj. at 3-6. Although details of the evidence adduced
 
 *388
 
 at trial are certainly probative of whether the trial court’s evidentiary ruling deprived petitioner of “fundamental fairness,” our analysis focuses on whether the exclusion (a) “was an error of constitutional dimension” and, if so, (b) “whether the constitutional error was harmless.”
 
 Rosario,
 
 839 F.2d at 924.
 
 See also Smalls,
 
 191 F.3d at 282-82 (noting that an eviden-tiary ruling is considered “trial error” subject to harmless error analysis).
 
 [4]
 

 1.
 
 Constitutional Requirements
 

 Petitioner cites an array of cases in which expert testimony comparable to his proposed experts was found to be admissible, as well as a litany of academic literature in support of it admissibility. Obj. at 6-9. In spite of all the cases petitioner cites finding childhood suggestibility testimony to be admissible, he is unable to point to any that find a failure to do so to be constitutional error.
 
 [5]
 
 Moreover, in oral argument before this Court, petitioner’s counsel was again unable to cite federal precedent supporting the proposition that an exclusion of this kind of testimony is constitutional error. Tr.
 
 [6]
 
 at 8-9. Thus, petitioner simply fails to refute Judge Pit-man’s conclusion that “[njeither my research, nor the parties’, has disclosed any case in which the exclusion of expert testimony similar to the testimony in issue here has been found to rise to the level of constitutional error.” Report at 12. In addition, it must be recalled that a defendant’s right to present “expert testimony is limited by the requirements of relevancy and by the trial court’s traditional discretion to prevent prejudicial or confusing testimony.”
 
 Agard v. Portuondo,
 
 117 F.3d 696, 704-05 (2d Cir.1997).
 
 [7]
 
 As such, we can make no finding that the exclusion of the proffered testimony in this case is, as a matter of law, erroneous.
 

 2.
 
 Overall Fairness
 

 Petitioner’s attack on Judge Pitman’s (and the Appellate Division’s) assessment that petitioner received a fair trial focuses on two aspects. First, petitioner takes issue with Judge Pitman’s concurrence with the trial court’s determination that the proposed expert testimony concerns matters within the province of the jury. Second, petitioner accuses Judge Pitman of confusing the issues of whether the
 
 *389
 
 proposed evidence was offered to impeach the witness’ credibility or her reliability. Again, neither is availing.
 

 a.
 
 The Province of the Jury
 

 As a general matter, it is within the range of permissible discretion for a trial court to exclude expert testimony concerning matters of common sense or matters within the province of the jury.
 
 See United States v. Onumonu,
 
 967 F.2d 782, 786 (2d Cir.1992);
 
 United States v. Nersesian,
 
 824 F.2d 1294, 1308 (1987).
 
 Accord People v. Fratello,
 
 92 N.Y.2d 565, 572, 684 N.Y.S.2d 149, 152, 706 N.E.2d 1173 (1998).
 
 See also United States v. Serna,
 
 799 F.2d 842, 850 (2d Cir.1986) (finding expert testimony to be properly excluded in cases where the proposed testimony “basically consisted of general pronouncements about the lack of reliability of eyewitness identification” or contained “conclusions [that] coincided with common sense”)
 
 abrogated on other grounds United States v. DiNapoli,
 
 8 F.3d 909, 914 n. 5 (2d Cir.1993);
 
 United States v. Luis,
 
 835 F.2d 37, 41 (2d Cir.1987) (finding that a district court may properly address the dangers of unreliable eyewitness identification testimony by giving a jury charge appropriate to the circumstances of the case);
 
 Levy v. Abate,
 
 No. 93 Civ. 0258, 1993 WL 267421, at *5 (S.D.N.Y. July 9, 1993) (finding it “wholly reasonable for the trial court to refuse to allow expert psychiatric testimony regarding the effects of ... simple fasting, seclusion and fear”).
 

 Here, the trial court made a specific finding that “the area of credibility of this witness and any suggestivity [sic] based on prior questions are areas of common knowledge well within the juiy’s realm without need for expert opinion.” Trial Transcript (“Tr.”) 78-79. The Appellate Division ratified this conclusion.
 
 People v. Washington,
 
 238 A.D.2d 263, 264, 657 N.Y.S.2d 24, 25 (1st Dep’t 1997) (“This subject was not beyond the knowledge of the jurors.”),
 
 appeal denied,
 
 90 N.Y.2d 944, 664 N.Y.S.2d 762, 687 N.E.2d 659 (1997). We cannot find that this determination, which is based in a mixture of fact and law, is either “unreasonable” or “contrary to” federal precedent.
 

 Moreover, the trial court in this case evidently distinguished many of the contrary state cases based on his factual finding that “[i]t is not a case similar to some of the child care cases where signs of abuse were noticed and then intensive investigations were conducted.” Tr. 409-10. In contrast, the court found that “based on the testimony in this case,” the victim had accused petitioner of raping her “by the time this case gets to law enforcement.”
 
 Id.
 
 Again, the Appellate Division affirmed this factual assessment. 238 A.D.2d at 264, 657 N.Y.S.2d at 25 (finding “the child revealed the incident prior to any prodding or questioning by anyone”). Applying the standards described above for evaluating evidentiary habeas claims, we concur with Judge Pitman’s conclusion that the trial judge was within his discretion to exclude petitioner’s proffered testimony. As such, we cannot find that the trial court’s determination was constitutional error.
 

 b.
 
 Credibility vs. Reliability
 

 Petitioner argues that Judge Pit-man “made the very same error the state courts made in assessing the effect of the precluded evidence: he conflated ‘credibility’ and ‘reliability.’ ” Obj. at 10.
 
 See also
 
 Tr. at 409-10 (referring to disputes over the “credibility of witnesses”). It is undoubtedly correct to distinguish between credibility (the jury’s assessment of whether a witness is telling the truth) and reliability (whether the witness’s perception or memory is accurate). Although expert testimony can be probative of a witness’s reliability, it is generally prohibited as to the witness’s credibility because of the danger that it will usurp the “[fundamental [ ] role of [the] juror as trier of fact.”
 
 See, e.g., United States v. Lumpkin,
 
 192 F.3d 280, 289 (2d Cir.1999). Regardless of the imprecise terminology used in this context, for the reasons set forth in the pre
 
 *390
 
 ceding section, it was within the discretion of the trial court to make its determination that in this case, the proposed testimony was “an area of common knowledge well within the jury’s realm without need for an expert.” Tr. 78-79.
 

 3.
 
 Harmless Error
 

 Even if it was error for the trial court to exclude petitioner’s proposed expert testimony, such error was rendered harmless by the fact that the defendant was nevertheless able to put the issue before the jury.
 
 See, e.g., Agard,
 
 117 F.3d at 706-07 (finding that an exclusion of expert testimony was “saved .... from rising to the level of constitutional harm because it did not deprive [the defendant] of the opportunity to make an argument to the jury”). Petitioner’s able counsel extensively cross-examined the victim as to conversations she had with her mother, her grandmother, a social worker, and an assistant district attorney. Tr. 189-211.
 
 See, e.g., Henry v. Speckard,
 
 22 F.3d 1209, 1215-16 (2d Cir.1994) (finding erroneous exclusion of testimony harmless where “the jury had an adequate basis to assess [a key witness’] credibility” because of extensive cross-examination);
 
 Herrera v. Lacy,
 
 No. 94 Civ. 0125, 1995 WL 669675, at *7 (E.D.N.Y. Nov.5, 1995) (finding that even if trial court’s decision to exclude evidence of witnesses’ unreliability was erroneous, such error was harmless given that “[d]efense counsel had ample opportunity to cross-examine both [witnesses]”).
 
 See also Davis v. Alaska,
 
 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (Cross-examination “expose[s] to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.”).
 

 Moreover, as Judge Pitman documented, defense counsel was able to use this evidence to argue in summation that the victim’s identification of her father “was the erroneous result of repeated, suggestive questioning by the police, social workers, doctors, and attorneys who had interviewed her.” Report at 7.
 
 See also
 
 Tr. at 452-58; Report at 11. Therefore, the expert’s exclusion did not deprive petitioner of the “opportunity to make [his] argument to the jury”
 
 See Agard,
 
 117 F.3d at 706-07.
 
 [8]
 

 CONCLUSION
 

 For the foregoing reasons, the petition for a writ of habeas corpus is denied. However, we do issue a certificate of ap-pealability.
 
 See
 
 28 U.S.C. § 2253.
 

 SO ORDERED.
 

 [1]
 

 . Petitioner cites to two cases in support of his position that the trial court’s ruling should be evaluated
 
 de novo
 
 to determine whether it is "contrary to” constitutional law. 28 U.S.C. § 2254(d)(1). These citations are singularly unpersuasive. The first,
 
 Lockhart v. Johnson,
 
 104 F.3d 54 (5th Cir.1997), is clearly distinguishable on its face. There, the claim was
 
 *387
 
 "not. presented to the state court,” but respondent waived its exhaustion requirement.
 
 Id.
 
 at 57-58. Here, petitioner "squarely raised his federal claims before, during and after trial." Obj. at 2. The second case cited by petitioner, an unpublished Fourth Circuit, case,
 
 Swann v. Taylor,
 
 1999 WL 92435, 173 F.3d 425 (4th Cir.1999), whose citation is disfavored, 4th Cir.R. 36(c), is also distinguishable. There, the Virginia Supreme Court, in responding to petitioner's claim that he had been denied his right to a have a competent psychiatrist evaluate his insanity claim, made a ruling specific to Virginia's evidentiary code and failed to use or even mention the United States Supreme Court’s clear constitutional mandate in
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Here, for reasons we will discuss further
 
 infra,
 
 the state court's decision is not inconsistent with federal constitutional protections.
 

 [2]
 

 . We note, though, that, a growing number of courts in this Circuit have adopted the more deferential "unreasonable application” standard in evaluating cases such as this one, where the trial court’s determination resolved a mixed question of fact and law.
 
 See, e.g., Leka v. Portuondo,
 
 76 F.Supp.2d 258, 275 (E.D.N.Y.1999);
 
 Patterson v. Headley,
 
 58 F.Supp.2d 274, 280 (S.D.N.Y.1999);
 
 Glover v. Portuondo,
 
 No. 96 Civ. 7616, 1999 WL 349936, at *4 (S.D.N.Y. May, 28, 1999);
 
 Millan v. Keane,
 
 No. 97 Civ. 3874, 1999 WL 178790, at *3 (S.D.N.Y. Mar.31, 1999).
 

 [3]
 

 . "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed ... the result would have been different.”
 
 United States v. Bagley,
 
 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "A ‘reasonable probability' is a probability sufficient to undermine confidence in the outcome.”
 
 Id.
 

 [4]
 

 . Petitioner appears to be indirectly attempting to contest the sufficiency of the evidence. We will not, however, be drawn into a debate about sufficiency because: (a) this is "not [the] forum[ ] in which to relitigate [a] state trial[ ],”
 
 Brecht v. Abrahamson,
 
 507 U.S. 619, 633, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); and (b) petitioner has not directly alleged such a claim, which would have placed on him under a much more difficult burden.
 
 See, e.g., Einaugler v. Supreme Court of the State of New York,
 
 109 F.3d 836, 839-840 (2d Cir.1997);
 
 Malsh v. Hanslmaier,
 
 102 F.3d 69, 70 (2d Cir.1996).
 

 [5]
 

 . The citation of state authority must be considered in light of the prerogative of state courts to afford a greater level of protection than that provided by the federal Constitution.
 
 See, e.g., Mills v. Rogers,
 
 457 U.S. 291,. 300, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982) (finding that "the substantive rights provided by the federal Constitution define only a minimum [and] state law may recognize liberty interests more extensive than those independently protected by the federal Constitution”). For the sake of completeness, we note that the state cases are not uniform in permitting the admission of this type of evidence.
 
 See, e.g., Daniel v. State,
 
 923 P.2d 728, 740 (Wy.1996);
 
 State v. Ellis,
 
 669 A.2d 752, 753 (Me.1996);
 
 State v. Kirschbaum,
 
 195 Wis.2d 11, 535 N.W.2d 462, 465-66 (1995);
 
 Commonwealth v. Trowbridge,
 
 419 Mass. 750, 647 N.E.2d 413, 419 (1995);
 
 State v. Swan,
 
 114 Wash.2d 613, 790 P.2d 610, 632 (1990);
 
 Saldiveri
 
 v.
 
 State,
 
 217 Md. 412, 143 A.2d 70, 74 (1958).
 

 [6]
 

 . "Tr." refers to the transcript of oral argument before this Court on March 10, 2000.
 

 [7]
 

 . Recently, the United States Supreme Court reversed the Second Circuit's holding in
 
 Agard
 
 on other grounds.
 
 Portuondo v. Agard,
 
 - U.S. -, 120 S.Ct. 1119, - L.Ed.2d -(Mar. 6, 2000). However, the Court left in tact the Second Circuit’s holding excusing the trial court's exclusion of expert testimony as harmless error. In fact, the Court restored the conviction, holding that the prosecutor’s comments in that case also did not violate the petitioner's constitutional rights.
 

 [8]
 

 . The case relied on by petitioner,
 
 Wray v. Johnson,
 
 202 F.3d 515 (2d Cir.2000), is inap-posite in that it speaks to an erroneous admission of evidence rather than an exclusion.