■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL FUSCHINO, Appellant. [719 NYS2d 152] —Peters, J. Appeal from a judgment of the County Court of Schenectady County (McGill, J.), rendered May 28, 1999, upon a verdict convicting defendant of the crimes of falsifying business records in the first degree (13 counts), criminal contempt in the first degree, criminal impersonation in the second degree (13 counts) and falsely reporting an incident in the third degree (seven counts), and the violation of harassment in the second degree (three counts).

In 1998, a Grand Jury handed up two indictments charging defendant with criminal conduct arising out of numerous telephone calls that he placed to Niagara Mohawk Power Corporation. Representing himself to be Norma Cortes or her daughter, Neysa Ribeca, defendant would request that the

power be shut off, the billing address changed or an investigation commenced upon his reported gas leak.

Following a jury trial, he was convicted of the enumerated crimes and sentenced as a second felony offender to varied terms of imprisonment, some running consecutively while others ran concurrently.[1] He appeals, propounding 14 ascriptions of error, the majority of which are either unpreserved for review or plainly lacking in merit.

Contended errors addressing the falsification of business records do, however, warrant our review. Despite the fact that the information provided to Niagara Mohawk customer service representatives was false, defendant maintains that the business records themselves do not contain false entries within the meaning of the Penal Law[2] because the records accurately reflect the information he provided. We disagree since each call containing false information, such as the identity of the caller, caused Niagara Mohawk to create a business record containing false entries.

Next addressing the contention that the requirements of Penal Law § 175.05 were not satisfied since the People failed to prove that defendant made or caused others to make a false entry in Niagara Mohawk's business records, again we find no merit. Audiotapes of defendant's conversations with customer service representatives revealed that on two occasions in July 1997, defendant specifically acknowledged that records were created and continued to be created as a result of his initiatives when he asked such customer service representatives whether the information he provided was accurately reflected in Niagara Mohawk's records. With the record further reflecting that he called Niagara Mohawk on *13 separate occasions*, each time requesting specific action concerning Cortes' account or reporting an incident which would cause action to be taken, we find, in viewing the evidence, as we must, in a light most favorable to the People (*see, People v Contes*, 60 NY2d 620), that it is legally sufficient to support the jury's verdict (*see,*

---

1. Defendant was sentenced to 2 to 4 years for the falsifying business records convictions and 2 to 4 years on the criminal contempt conviction; the latter sentence ran consecutively to the former sentence which was concurrent. He was further sentenced to concurrent jail terms of one year on each criminal impersonation conviction, 90 days on the falsely reporting an incident conviction and 15 days on the harassment conviction, all of which merged with his State prison sentence.

2. Penal Law § 175.00 (2) defines a "business record" as "any instrument or article, including computer data or a computer program, kept or maintained by an enterprise for the purpose of evidencing or reflecting its condition or activity."

*People v Cambria*, 204 AD2d 167, *lv denied* 84 NY2d 823; *People v Heller*, 184 AD2d 657, *lv denied* 80 NY2d 930).

To establish that defendant was the person who made the phone calls to Niagara Mohawk and thus support the charges of falsifying business records, the People produced, *inter alia*, three State Troopers who had participated in a 1993 investigation of defendant in which a wiretap order had been granted. These Troopers testified that they recognized the voice on the 1993 recording of a male trying to disguise his voice as a woman to be the same person whose voice they heard in the audiotapes made by Niagara Mohawk. While defendant contends that the court erred in permitting this testimony as evidence of prior uncharged crimes, we note that such evidence may be admitted, not for the purpose of establishing an individual's propensity to engage in criminal conduct, but for the purpose of demonstrating identity, motive or intent (*see, People v Ventimiglia*, 52 NY2d 350; *People v Muniz*, 248 AD2d 644, *lv denied* 92 NY2d 857). Under these circumstances, where certain identification testimony was extensively impeached, County Court properly determined that the probative value of the challenged evidence clearly outweighed its prejudicial effect (*see, People v Robinson*, 68 NY2d 541, 548).

Addressing the sufficiency of proof concerning Niagara Mohawk's status as an official, or quasi official, agency or organization "having the function of dealing with emergencies involving danger to life or property" (Penal Law § 240.50 [2]), we find no error. Michael Hulihan, a Niagara Mohawk employee, testified that Niagara Mohawk is a public utility incorporated in the State with departments throughout the State specifically designated to deal with electric and gas emergencies and affirmatively respond thereto. Debra Sippel, an employee in Niagara Mohawk's emergency department, confirmed this testimony. In our view, this testimony was sufficient.

Reviewing the sentence imposed, we note that it falls within the permissible statutory range. While defendant's mental disorders are longstanding, they do not excuse his conduct. Recognizing that County Court considered this factor in determining an appropriate penalty, we find no reason to disturb the sentence (*see, People v Gorga*, 268 AD2d 614).

Rejecting the remaining contentions as without merit, we affirm.

Cardona, P. J., Crew III, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.