■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY NICKEL, Appellant. [788 NYS2d 274]—

Kane, J. Appeal from a judgment of the County Court of Albany County (Czajka, J.), rendered July 6, 2001, convicting defendant following a nonjury trial of the crimes of sodomy in the first degree, aggravated sexual abuse in the second degree, sexual abuse in the first degree (two counts) and endangering the welfare of a child.

In the course of a police investigation, defendant gave a written statement in which he described his sexual proclivities, including his love for and sexual touching of several young boys. A grand jury handed up a seven-count indictment charging defendant with various sex crimes involving minors. Defendant moved to sever the counts of the indictment and for a pretrial hearing to determine whether the child victims should be precluded from testifying due to suggestive questioning by investigators. County Court denied these motions. Following a bench trial, the court dismissed one count of aggravated sexual abuse, acquitted defendant of use of a child in a sexual performance, and found him guilty of sodomy in the first degree, aggravated sexual abuse in the second degree, two counts of sexual abuse in the first degree, and endangering the welfare of a child. The court sentenced defendant to prison terms of 25 years for his sodomy conviction, 15 years for aggravated sexual abuse, seven years for each count of sexual abuse, and one year for endangering the welfare of a child. All terms were to be served consecutively, except the one-year term, which was to run concurrent to the other terms. Defendant appeals.

County Court did not err in denying defendant's motion to sever the counts of the indictment. Although the counts related to three different victims and different locations, the counts were statutorily joinable because they were "the same or similar in law" (CPL 200.20 [2] [c]). In such circumstances, the determination whether to sever the counts rests in the trial court's sound discretion (*see* CPL 200.20 [3]; *People v Johnson*, 268 AD2d 891, 893 [2000], *lv denied* 94 NY2d 921 [2000]), which we cannot say was abused here. Proof of each charge was "separately presented, uncomplicated and easily distinguishable" (*People v Kelly*, 270 AD2d 511, 512 [2000], *lv denied* 95 NY2d 854 [2000]). The court's acquittal on one charge indicates that it separately considered the evidence as to each victim, and defendant was not prejudiced by joinder (*see People v Monte*, 302 AD2d 687, 688 [2003]; *People v Kelly, supra* at 512-513).

County Court also properly denied defendant's motion for a pretrial taint hearing. Although there is no express statutory authority for a hearing to determine whether the testimony of child witnesses has been tainted by suggestive interviewing

techniques (*see People v Jones*, 185 Misc 2d 899, 901 [2000]), such absence is not determinative (*see People v Tunstall*, 63 NY2d 1, 6-9 [1984] [mandating pretrial taint hearing for witness who was hypnotized]; *People v Hughes*, 59 NY2d 523 [1983] [same]; *but see People v Wilson*, 255 AD2d 612, 612-613 [1998], *lv denied* 93 NY2d 981 [1999] [denying child witness taint hearing because no express exclusionary rule and no novel scientific evidence]). Upon a proper showing, a court may direct a pretrial taint hearing (*see People v Kemp*, 251 AD2d 1072 [1998], *lv denied* 92 NY2d 900 [1998] [denying pretrial hearing because no nonspeculative allegations of undue suggestion]; *People v Michael M.*, 162 Misc 2d 803, 810-811 [1994] [ordering taint hearing regarding child witness]; *Jelinek v Costello*, 247 F Supp 2d 212, 279 [2003]). Here, defendant failed to make a nonspeculative showing of any undue suggestion. In any event, any suggestibility, the manner of questioning and its effects on the victims' testimony could be, and was, addressed on cross-examination of the victims and the police investigators (*see People v Kanani*, 272 AD2d 186, 187 [2000], *lv denied* 95 NY2d 935 [2000]; *People v Washington*, 238 AD2d 263, 264 [1997], *lv denied* 90 NY2d 944 [1997]). Thus, the court properly denied a pretrial taint hearing.

The verdict was not against the weight of the evidence. Defendant's own statement, the photographic evidence and the victims' testimony established guilt. Inconsistencies or inaccuracies in such testimony merely raised credibility issues that the trier of fact was free to resolve (*see People v Black*, 304 AD2d 905, 907-908 [2003], *lv denied* 100 NY2d 578 [2003]; *People v Rivera*, 281 AD2d 702, 703 [2001], *lv denied* 96 NY2d 805 [2001]). As no witness's testimony was incredible as a matter of law, and giving due deference to the trier of fact who observed the witnesses, we cannot say that the verdict was against the weight of the evidence (*see People v Alford*, 287 AD2d 884, 887 [2001], *lv denied* 97 NY2d 750 [2002]; *People v Soulia*, 263 AD2d 869, 872 [1999], *lv denied* 94 NY2d 829 [1999]).

The admission of expert testimony rests within the sound discretion of the trial court (*see People v Williams*, 97 NY2d 735, 736 [2002]; *People v Berry*, 5 AD3d 866, 867 [2004], *lv denied* 3 NY3d 637 [2004]). County Court did not abuse its discretion in excluding defendant's proffered expert testimony since the comparison of a clear photograph of defendant's profile to defendant present in court was within the ken of the factfinder, rendering the expert's opinion unnecessary and improper (*see People v Paro*, 283 AD2d 669, 670 [2001], *lv denied* 96 NY2d 922 [2001]).

The People's comments did not deprive defendant of a fair trial. References to defendant as a "boy lover" and to the organization NAMBLA parroted phrases used in defendant's statement to police, differentiating this case from similar comments in *People v Bagarozy* (132 AD2d 225 [1987]). Several objections to such comments or characterizations were sustained. Even assuming that some of the prosecutor's comments were erroneous, as this was a bench trial and judges are presumed capable of rendering dispassionate decisions solely on appropriate legal criteria (*see Matter of Dean S.*, 185 AD2d 324, 325 [1992]; *People v Arrington*, 158 AD2d 461 [1990], *lv denied* 76 NY2d 730 [1990]), such comments did not deprive defendant of a fair trial, especially considering the overwhelming evidence of defendant's guilt.

Defendant received the effective assistance of counsel. Ineffective assistance cannot be established merely by citing losing trial tactics (*see People v Curry*, 294 AD2d 608, 611 [2002], *lv denied* 98 NY2d 674 [2002]). The decision not to request an adjournment for consultation with a medical expert regarding one victim's records was a trial strategy, as counsel was able to effectively cross-examine that victim regarding his extensive medication regimen. Although counsel did not present an expert witness regarding child victim suggestibility, he cross-examined the children and investigating officers, and provided County Court with information and case law concerning child suggestibility. Given this information, County Court was clearly in a position to make a reasoned determination concerning the reliability of the child witnesses as well as their credibility. Despite defendant's hindsight disagreement with counsel's trial strategies, defendant was provided meaningful representation.

We find no merit to defendant's argument that County Court abdicated its role as neutral arbitrator. The requirement that the court "consider the case" (CPL 320.20 [3] [d]) does not contemplate any threshold minimum time for deliberation. Additionally, the court was not required to provide a rationale or basis for its determination any more than a jury would be for its verdict (*see People v Carter*, 63 NY2d 530, 539 [1984]).

Lastly, defendant contends that his sentence, totaling over 50 years, is harsh and excessive. Given defendant's efforts to access particularly vulnerable children and the impact of his conduct upon the children, we find that a maximum sentence for defendant's most serious offense against each child is justified. Nevertheless, in part because defendant has no criminal history, we exercise our discretion to modify the sentence in the interest of justice (*see* CPL 470.15 [6] [b]), by directing that the

multiple charges concerning one victim run concurrently to each other but consecutively to the conviction on the single charge concerning the other victim (*compare People v Thornton*, 4 AD3d 561, 563-564 [2004], *lv denied* 2 NY3d 808 [2004]; *People v Hutzler*, 270 AD2d 934, 936 [2000], *lv denied* 94 NY2d 948 [2000]).

Spain and Mugglin, JJ., concur.

Peters, J.P. (concurring in part and dissenting in part). I dissent solely on the issue of sentence. I fail to find that the circumstances herein warrant modification of the sentence in the interest of justice.

Defendant pursued employment and volunteer positions that would place vulnerable children in his care and then victimized them for his own sexual gratification. Defendant maintained throughout these proceedings that such exploitation of these children was an acceptable expression of love, believing that they did not contest his sexual violation of them. These events were further compounded by defendant's photographing of himself sodomizing one of his nine-year-old victims. At trial, two victims testified concerning defendant's dehumanizing acts.

Defendant's inability to conform his conduct to the restrictions imposed upon him was apparent even after he was arrested. When he was released on bail and placed on electronic monitoring, he corresponded with another known sex offender and told him that he continued to have contact with minors in violation of his conditions. He further professed his philosophical view that pedophilia is an "acceptable expression of God's will for love and unity among human beings."

Considering defendant's abhorrent conduct and lack of remorse, I find no basis upon which I could conceivably reduce this sentence in any manner suggested by my colleagues (*see People v Serrano*, 14 AD3d 874 [2005] [decided herewith] [the defendant's sentence of over 100 years in prison for sex offenses affirmed]; *People v Greene*, 13 AD3d 991 [2004]; *People v Sipe*, 7 AD3d 827 [2004]; *People v Carpenter*, 301 AD2d 676, 676 [2003], *lv denied* 99 NY2d 626 [2003]; *People v Jurgensen*, 288 AD2d 937, 938 [2001], *lv denied* 97 NY2d 684 [2001]; *People v Gero*, 286 AD2d 789 [2001], *lv denied* 97 NY2d 641 [2001]; *People v Gorga*, 268 AD2d 614, 615 [2000]; *People v David*, 263 AD2d 615 [1999]).

Carpinello, J. (concurring in part and dissenting in part). I dissent solely on the issue of sentence. In my view, both the original sentence imposed, an aggregate prison term of 54 years, as well as the majority's modification thereof to an aggregate prison term of 32 years, are harsh and excessive. While I do not in any way minimize defendant's abhorrent conduct toward ei-

ther victim, I do not think it warrants maximum, consecutive sentencing, even as modified by the majority (*see People v Morin*, 192 AD2d 791 [1993], *lv denied* 81 NY2d 1077 [1993]). Under equally offensive or even more egregious facts than at issue here, courts have imposed markedly lower sentences (*see e.g. People v Munroe*, 307 AD2d 588 [2003], *lv denied* 100 NY2d 644 [2003]; *People v Parker*, 307 AD2d 538 [2003], *lvs denied* 100 NY2d 644 [2003], 2 NY3d 744 [2004]; *People v Paige*, 289 AD2d 872 [2001], *lv denied* 97 NY2d 759 [2002]; *People v Johnson [Raggs] [Moore]*, 268 AD2d 891 [2000], *lvs denied* 94 NY2d 921, 923, 924 [2000]; *People v Morin, supra*). Thus, I believe concurrent sentences aggregating 25 years would be sufficient under the circumstances.

Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by directing that defendant's sentences for sodomy in the first degree, aggravated sexual abuse in the second degree, sexual abuse in the first degree and endangering the welfare of a child under counts 1, 2, 5 and 6 of the indictment run concurrently to one another and consecutively to the sentence for sexual abuse in the first degree under count 4 of the indictment; and, as so modified, affirmed.